IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MELVIN ANTHONY HERNANDEZ,    :
    :
           Petitioner,    :        CIVIL ACTION NO. 19-508
    :
    v.    :
    :
BARRY SMITH, THE DISTRICT    :
ATTORNEY OF THE COUNTY OF    :
LEHIGH, and THE ATTORNEY    :
GENERAL OF THE STATE OF    :
PENNSYLVANIA,    :
    :
           Respondents.    :

## **MEMORANDUM OPINION**

Smith, J.                                          September 29, 2020

The *pro se* movant, a state prisoner serving a lengthy sentence after pleading guilty to aggravated assault and conspiracy to commit robbery, seeks relief under Rule 60(b)(4) and (6) of the Federal Rules of Civil Procedure from this court's order dismissing his habeas petition under 28 U.S.C. § 2254 because he failed to file it within the one-year statute of limitations and the petition was not subject to equitable tolling. He seeks relief from the court's determination on a variety of grounds, including: (1) the dismissal order is void because both this court and the United States Magistrate Judge who issued the report and recommendation that this court adopted in the dismissal order lacked jurisdiction, (2) the statute of limitations contained in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") violates the Tenth Amendment, (3) he can demonstrate exceptional circumstances warranting relief because he is actually innocent insofar as his sentence violated his Sixth Amendment right to a jury trial pursuant to *Alleyne v. United States*, 570 U.S. 99 (2013), (4) AEDPA's statute of limitations violates his due process rights, and (5) the

United States Supreme Court's decision in *United States v. Haymond*, 139 S. Ct. 2369 (2019) is an intervening change in the law that constitutes an extraordinary circumstance warranting relief.

As discussed below, the court determines that the movant has filed a true Rule 60(b) motion and not an unauthorized second or successive habeas petition because, while he blurs the line of a procedural challenge with some of his arguments, he is essentially challenging this court's prior procedural ruling. Nevertheless, the movant is not entitled to any relief because, *inter alia*, this court and the magistrate judge had jurisdiction in this matter, AEDPA's statute of limitations does not violate the Tenth Amendment, the movant has not shown that he is actually innocent, the movant's due process rights were not violated, and *Haymond* has no applicability to this matter. Accordingly, the court must deny the Rule 60(b) motion.

## I.    PROCEDURAL HISTORY

In January 2013, the City of Allentown Police Department charged the *pro se* movant, Melvin Anthony Hernandez ("Hernandez"), with robbery, aggravated assault, theft by unlawful taking, receiving stolen property, attempted unlawful restraint, and conspiracy to commit robbery. *See* Docket, *Commonwealth v. Hernandez*, No. CP-39-CR-42-2013 (Lehigh Cnty. Ct. Com. Pl.), *available at:* https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-39-CR-0000042-2013&dnh=mFSEjwtwPrLRg4fxVtTQbQ%3d%3d ("Docket"); *Commonwealth v. Hernandez*, No. 1901 EDA 2014, 2015 WL 6166581, at *1 (Pa. Super. Apr. 27, 2015). The state courts described the facts underlying these charges as follows:

> The charges stemmed from a brutal attack that occurred at the Hamilton Tower apartment building in Allentown, Pennsylvania, on November 18, 2012. That night, [Hernandez] and an unidentified accomplice forcibly entered Apartment 315, savagely beat its 46–year–old occupant[,] and demanded that he give them everything he had. During the attack, [Hernandez] and the other robber tied the victim to a chair, attempted to slit his throat with a folding knife, stabbed him in the torso with a screwdriver, hit him with a miniature baseball bat[,] and repeatedly punched him in the face and head. After leaving the scene, [Hernandez] was

arrested by police as he stepped from the apartment elevator. He was covered in blood and was holding the victim's x-box video system. [Hernandez] had other property of the victim in his pockets. When the police entered Apartment 315, they found the badly injured victim, blood, the implements used to restrain and assault the victim[,] and a bag left behind by the attackers filled with the victim's personal property. The victim was taken to the hospital where he was treated for a broken nose, orbit fractures, a cut to his neck, a large blunt force injury to his torso, and other abrasions and contusions. The victim had reconstructive surgery on the right eye. He had surgery planned for August 2013 on his left eye. As a result of the attack, the victim has short-term memory loss, severe headaches, significant vision problems[,] and depression for which he treats with a therapist.

*Hernandez*, 2015 WL 6166581, at *1 (third alteration in original) (quoting Sept. 8, 2014 Trial Ct. Op. at 1–2).

Hernandez pleaded guilty to aggravated assault and conspiracy to commit robbery in the Court of Common Pleas of Lehigh County on June 5, 2013. *See id.* The trial court sentenced Hernandez on July 23, 2013, to an aggregate sentence of a minimum of 17 ½ years to a maximum of 35 years of state imprisonment. *Id.* Hernandez filed post-sentence motions on July 29, 2013, which the trial court denied on August 23, 2013. *Id.*

Although Hernandez did not file a notice of appeal from his judgment of sentence, he filed a petition for post-conviction collateral relief under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. §§ 9541–46 ("PCRA"), on March 25, 2014. *Id.*; *see also* Docket. The PCRA court appointed counsel to represent Hernandez, and appointed counsel filed an amended PCRA petition on May 12, 2014. *Hernandez*, 2015 WL 6166581, at *1; Docket. On June 27, 2014, the PCRA court granted the amended petition insofar as Hernandez requested that the trial court reinstate his direct appeal rights *nunc pro tunc*. *Hernandez*, 2015 WL 6166581, at *1. In all other respects, the PCRA court denied the motion. *See* Docket.

Hernandez then filed a direct appeal to the Superior Court of Pennsylvania.[1] *Hernandez*, 2015 WL 6166581, at *1; Docket. The Superior Court affirmed Hernandez's judgment of sentence on April 27, 2015.[2] *Hernandez*, 2015 WL 6166581, at *1; Docket. Hernandez did not file a petition for allowance of appeal with the Supreme Court of Pennsylvania.

On June 5, 2015, Hernandez timely filed a *pro se* PCRA petition, and the PCRA court appointed new counsel to represent him. Docket; *Commonwealth v. Hernandez*, No. 3621 EDA 2015, 2016 WL 6124325, at *1 (Pa. Super. Oct. 19, 2016). Hernandez's appointed counsel filed a motion to withdraw as counsel and a no-merit letter on August 13, 2015, and the PCRA court granted counsel's request for leave to withdraw on October 1, 2015. Docket; *Hernandez*, 2016 WL 6124325, at *1. The PCRA court then filed a notice of intent to dismiss the PCRA petition without a hearing pursuant to Rule 907 of the Pennsylvania Rules of Criminal Procedure on October 18, 2015. Docket; *Hernandez*, 2016 WL 6124325, at *1. Although Hernandez objected to the notice, the PCRA court dismissed the PCRA petition without a hearing on October 28, 2015. Docket; *Hernandez*, 2016 WL 6124325, at *1. Hernandez then timely filed a *pro se* notice of appeal to the Superior Court. Docket; *Hernandez*, 2016 WL 6124325, at *1. On October 19, 2016, the Superior

---

[1] It appears that while the case was on appeal, the trial court appointed new counsel to represent Hernandez. *See* Docket.

[2] On appeal, Hernandez presented two issues for appellate review:

> 1. Whether there is a substantial question for which this Honorable Court should grant allowance of appeal from discretionary aspects of sentencing?

> 2. Whether the trial court erred in sentencing [Hernandez] to a harsh and excessive sentence imposed far exceeded the sentencing [guidelines] and failed to consider mitigating factors and the sentencing recommendation contained within the pre-sentence report?

*Hernandez*, 2015 WL 6166581, at *2 (second alteration in original) (quoting Hernandez's appellate brief at 4).

The Superior Court determined that Hernandez had raised a substantial question about his sentence and addressed the merits of his sentencing claim. *Id.* at *3. The court determined that "the trial court's determination [to sentence Hernandez outside the sentencing guideline range] was not an abuse of discretion and that the sentence outside of the guidelines was not unreasonable under the circumstances." *Id.* at *4. As such, the court concluded that Hernandez's "challenge to the discretionary aspects of his sentence [wa]s without merit." *Id.*

4

Court affirmed the dismissal of Hernandez's PCRA petition.[3] Docket; *Hernandez*, 2016 WL 6124325, at *1, 3. Hernandez did not file a petition for allowance of appeal with the Supreme Court of Pennsylvania.

On January 26, 2019, Hernandez filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this court.[4] Doc. No. 1. In the petition, Hernandez raised the following claims:

**GROUND ONE:**

Art. VI, Cl. 2, Sixth & Fourteenth Amendment violations & miscarriage of justice based on actual innocence as no "crime" was charged, and where aggravated sentences under "advisory" guidelines are unconstitutional.

. . .

Petitioner's sentences-which are "mandatory minimums" because by state statutes "It is mandatory" that the "minimum" be served in full before parole eligibility – were "aggravated", "altered", "elevated", "enhanced", "heightened", "narrowed", [and] "triggered" by sentencing factors not charged or admitted by petitioner at plea or sentence. Per *Alleyne v. U.S.*, 133 S.Ct. 2151 (2013), "any fact" effecting [sic] a sentence or sentencing floor as described above is an "element" of the crime and must be charged in the indictment/information & admitted or stipulated to during

---

[3] On appeal from the dismissal of his PCRA petition, Hernandez raised two issues: (1) "Did the PCRA court err as a matter of law when it dismissed [his] PCRA petition as frivolous;" and (2) "Does [his] sentence violate the Pennsylvania and United States Constitutions and *Alleyne v. United States*?" *Hernandez*, 2016 WL 6124325, at *2. In addressing these issues, the Superior Court explained that

> while [Hernandez] purports to present two distinct claims, they actually pertain to the identical position. [Hernandez] first asserts that the PCRA court's finding of frivolity was erroneous since his sentences are illegal based on the holding of the Supreme Court of the United States in *Alleyne v. United States*, 133 S.Ct. 2151 (2013), which held that any fact, other than a prior conviction, that is used to invoke a mandatory minimum sentence must be submitted to a jury and found beyond a reasonable doubt. [Hernandez's] second averment is that he was sentenced under a mandatory minimum statute infirm under *Alleyne*.

*Id.* (internal citations omitted).

The Superior Court determined that Hernandez could not raise an issue under *Alleyne* because "no mandatory minimum sentence was invoked or applied in this case. Indeed, none was even mentioned." *Id.* Instead, the trial court sentenced Hernandez "after consideration of a pre-sentence report, the guidelines, impact statements from the victim and his sister, and [Hernandez's] allocution. *Id.* Further, although Hernandez claimed that the trial court said he was "armed," the trial court made no such reference as Hernandez was not armed. *Id.* The trial court only mentioned that Hernandez "used weapons consisting of a screwdriver and knife on his victim." *Id.* As such, the Superior Court concluded that Hernandez's *Alleyne* claims failed. *Id.*

[4] The federal "prisoner mailbox rule" provides that a *pro se* prisoner's petition is deemed filed "at the time petitioner delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 275–76 (1988). Here, Hernandez declared that he gave the petition to prison authorities for mailing on January 26, 2019. *See* Pet. at ECF p. 18. The court uses this date as the filing date.

plea &/or sentencing proceedings to ensure Sixth Amendment right jury [sic] trial and Fourteenth Amendment due process and equal protection rights. Petitioner's sentence pursuant to "advisory" guidelines sentencing scheme violates 6th and 14th amendments, per *Hurst v. Florida*, 136 S.Ct. 616 (2016).

. . .

**GROUND TWO:** Tenth & Fourteenth Amendment violations caused invalid pleas where respondents were without power to hale [sic] him in to [sic] court to answer for felony charges.

. . .

Regarding this claim, petitioner does <u>not</u> negate any facts, acts admitted. Petitioner asserts that respondents were devoid of Tenth Amendment sovereign police power to arrest, prosecute, sentence, or imprison him because respondents have abdicated Tenth Amendment authority over the regulation and punishment of intrastate crime when acting in excess of the authority that federalism defines by accepting conditioned-federal funds allowing Congress to regulate respondents' state government's regulation of petitioner in the criminal justice context.

. . .

**GROUND THREE:** Fifth and Fourteenth Amendment violations of void judgments of conviction and sentence pursuant to vague criminal statute of aggravated assault and vague element malice.

. . .

The essential element of aggravated assault is "malice" which is defined in vague terms, one of which is "recklessly under circumstances manifesting <u>extreme indifference</u> to the <u>value</u> of human life." See 6/5/13 Guilty Plea Hearing, N.T., pg. 18. What is [sic] parameter of "extreme" indifference? The "value" of life as measured by who? [sic] Ghandi? Jeffrey Dahmer?

. . .

**GROUND FOUR:** Sixth & Fourteenth Amendments of ineffective assistance of trial counsel who cause [sic] an invalid plea.

. . .

As incorporated herein from the "supporting facts" at grounds one-three, counsel's omissions of: being cognizant of information petition [sic] of the "law" & "facts" before abusing petitioner to accept a plea; failing to ensure an adequate factual basis in regard to <u>who</u> would be testifying to the accusations; failing to ensure petitioner

was constitutionally sentenced. Petitioner is prejudiced by being subjected to fundamentally unfair criminal proceedings, & had counsel lawfully & adequately informed him, he would have rejected plea & proceeded to trial challenging the jurisdiction of respondents & court.

Pet. at ECF pp. 7–8, 9, 11, 12–13 (some capitalization altered).[5]

Hernandez appeared to recognize that his habeas petition was untimely as he included the following in the "**TIMELINESS OF PETITION**" section of the form habeas petition:

One-year statute of limitations violates Tenth Amendment as it was enacted under Title I of AEDPA as a quid pro quo benefit from Congress to state respondents; under the rule of decision of *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016), "new" substantive rules are automatically retroactive to cases on collateral review, & the "grandfather" clause/provision at § 2244(d)(1), is of no further force or effect in light of *Montgomery*, per the Rules Enabling Act, 28 U.S.C. § 2072(b).

. . .

Alternatively, Petitioner asserts miscarriage of justice exception as he was not charged with the "crime" for which he was sentenced to aggravated punishments. The "facts" aggravating the penalty are elements of the crime per *Alleyne*.

*Id.* at ECF pp. 15, 17. He also appeared to claim that his one-year period of limitation should run from three "new substantive rules" established in the United States Supreme Court's decisions in *Class v. United States*, 138 S. Ct. 798 (2018), *Murphy v. National Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018), and *Johnson v. United States*, 576 U.S. 591 (2015). *Id.* at ECF p. 17.

The undersigned referred the petition to the Honorable Linda K. Caracappa for the preparation of a report and recommendation on February 14, 2019. Doc. No. 3. The respondents filed a response in opposition to the habeas petition on July 11, 2019. Doc. No. 7. In the response, the respondents argued that the court should dismiss the petition because Hernandez did not file it within AEDPA's one-year statute of limitations and neither statutory nor equitable tolling saved it. Resp. to Pet. for Writ of Habeas Corpus at 8–10, Doc. No. 7.

---

[5] Hernandez filled out the petition by using mostly capital letters. *See generally* Pet.

Judge Caracappa issued a report and recommendation on August 28, 2019. Doc. No. 8. In the report, Judge Caracappa agreed with the respondents that Hernandez failed to timely file the habeas petition. *See* R. & R. at 4–6. As such, Judge Caracappa recommended that the court dismiss the petition and not issue a certificate of appealability. *Id.* at 6.

Hernandez did not file objections to the report and recommendation, and this court entered an order on October 8, 2019, which, *inter alia*, adopted the report and recommendation, dismissed the habeas petition, and declined to issue a certificate of appealability. *See* Oct. 8, 2019 Order at 1–2. Hernandez did not file an appeal from this order to the Third Circuit Court of Appeals.

Hernandez filed the instant "Motion for Reopening of Judgment Under Fed.R.Civ.P. Rule 60(b)(4), (6)" on January 10, 2020. Doc. No. 12. Although the respondents did not file a response to this motion, it is ripe for disposition.

## II.     DISCUSSION

Although unclear due to the convoluted nature of Hernandez's arguments, it appears that he seeks relief from the court's October 8, 2019 dismissal order under Rule 60(b)(4) on multiple grounds. First, he claims that the order is void because both this court and Judge Caracappa purportedly lacked jurisdiction to enter the order dismissing the habeas petition and the report and recommendation, respectively. *See* Pet'r's Mot. for Reopening of J. Under Fed.R.Civ.P. Rule 60(b)(4), (6) ("Mot.") at 2, Doc. No. 12. Second, he appears to assert that he is entitled to relief under the fundamental miscarriage of justice exception to the one-year time bar set forth in *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013). *Id.* He claims that he is "actually innocent, yet imprisoned in violation of his 5th, 6th, 10th, and 14th Amendment rights." *Id.* He appears to be basing his actual innocence claim on his sentence violating *Alleyne v. United States*, 570 U.S. 99 (2013). *Id.*

Third, Hernandez contends that the court lacked jurisdiction to dismiss his habeas petition for its untimeliness because 28 U.S.C. § 2244(d)(1) and Title I of AEDPA[6] "have been rendered of no further force or effect under the Supremacy Clause of Article VI, Clause 2 of the U.S. Constitution, the Rules Enabling Act, 28 U.S.C. § 2072-2074 and *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016)." *Id.* at 3. He believes that *Montgomery* and the Supremacy Clause preclude the court from "recogniz[ing] any 'grandfather clause that permits states to enforce punishments the Constitution forbids.'" *Id.* (quoting *Montgomery*, 136 S. Ct. at 731). Fourth, he asserts that Title I of the AEDPA and section 2244(d)(1) violate the Tenth Amendment. *Id.* at 4–5.

Finally, he claims that the courts have violated his due process rights. *Id.* at 5–6. The foundation for this argument appears to be that because Title I of AEDPA is "facially and as-applied unconstitutional under the Tenth Amendment, [*New York v. United States*, 505 U.S. 144 (1992)], and *Murphy*, [it] . . . plainly violates Fifth Amendment Due Process." *Id.* at 5.

As for his Rule 60(b)(6) claim, Hernandez generally asserts that he is entitled to relief because of an extraordinary intervening change in substantive and procedural law. *Id.* at 6. He contends that it is a possibility that a change in controlling law, even standing along, could justify Rule 60(b)(6) relief. *Id.* at 6–7 (citation omitted). While unclear, it appears that Hernandez claims that even though he mentioned *Murphy* in his habeas petition as a "new, substantive rule," the court did not consider his argument when dismissing his petition. *Id.* at 7. In addition, he appears to assert that *United States v. Haymond*, 139 S. Ct. 2369 (2019) is another change in controlling law that also entitles him to relief. *Id.* at 8–10.

---

[6] Title I of AEPDA amended section 2244(d)(1) to its current form. *See* AEDPA § 101, 110 Stat. 1217; *see also Koch v. Schuylkill Cnty. Prison*, 94 F. Supp. 2d 557, 561 (M.D. Pa. 2000) (referencing AEDPA's new statute of limitations created by section 101).

In analyzing these claims, the court must first determine whether the instant motion is a true Rule 60(b) motion or actually a second or successive habeas motion. Then, if the motion is a true Rule 60(b) motion, the court must analyze Hernandez's claims to determine if he is entitled to relief. As discussed below, although Hernandez surely blurs the lines between a true Rule 60(b) motion and a second or successive habeas petition, the court deems it to be a true Rule 60(b) motion because it is a procedural attack on the order dismissing the habeas petition because he did not file it within the statute of limitations and he was not entitled to equitable tolling. Nonetheless, even treating the instant motion as a true Rule 60(b) motion, the court will deny it because Hernandez's contentions are utterly devoid of merit.

### A.    Whether the Motion is a True Rule 60(b) Motion or an Unauthorized Second or Successive Habeas Petition

Rule 60(b) of the Federal Rules of Civil Procedure provides as follows:

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

**(1)** mistake, inadvertence, surprise, or excusable neglect;

**(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

**(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

**(4)** the judgment is void;

**(5)** the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

**(6)** any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Rule 60(c), in turn, provides the timing within which a Rule 60(b) motion must be made: either within a year of the entry of the order or judgment from which the motion

seeks relief if the motion is made pursuant to Rule 60(b)(1), (2), or (3), or "within a reasonable time" if the motion is made under any other provision. Fed. R. Civ. P. 60(c).

Because this is a federal habeas action, the court must evaluate whether the instant Rule 60(b) motion is actually an unauthorized second or successive habeas petition. AEDPA mandates that before a state prisoner may file a second or successive habeas petition in which he challenges a judgment of sentence that he previously challenged in a federal habeas action, he must first obtain an order from the appropriate court of appeals authorizing the district court to consider the application. *See* 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."); *see, e.g.*, *Magwood v. Patterson*, 561 U.S. 320, 330–31 (2010) ("If an application [for a writ of habeas corpus] is 'second or successive,' the petitioner must obtain leave from the court of appeals before filing it with the district court."); *United States v. Winkelman*, 746 F.3d 134, 135 (3d Cir. 2014) (interpreting motion to recall mandate and reinstate direct appeals as successive habeas motion); *In re Pendleton*, 732 F.3d 280, 282 (3d Cir. 2013) (per curiam) (addressing requests for authorization to file successive habeas petition under section 2254 to raise claims under *Miller v. Alabama*, 567 U.S. 460 (2012)). Importantly, AEDPA's allocation of "gatekeeping" responsibilities to the courts of appeals have divested district courts of jurisdiction over habeas applications that are second or successive. *See, e.g.*, *Burton v. Stewart*, 549 U.S. 147, 157 (2007) ("The long and short of it is that [the petitioner] neither sought nor received authorization from the Court of Appeals before filing his . . . 'second or successive' petition challenging his custody, and so the District Court was without jurisdiction to entertain it."). A habeas petitioner cannot avoid AEDPA's second or successive gatekeeping mechanism by raising habeas claims in a filing that

11

he designates as a Rule 60(b) motion. *See Sutton v. Commonwealth*, Civ. A. No. 17-109 Erie, 2018 WL 4599825, at *2 (W.D. Pa. Sept. 25, 2018) (explaining that "the Petitioner could not avoid AEDPA's second or successive gatekeeping mechanism[,] by simply designating a filing as a Rule 60(b) motion" (internal quotation marks and citations omitted)); Brian R. Means, FEDERAL HABEAS MANUAL § 11:42, Westlaw (database updated May 2020) (explaining that "a [habeas] petitioner is not permitted to circumvent AEDPA's second or successive petition requirements simply by labeling the petition or motion as something other than what it is" (citation omitted)).

The starting point for analyzing whether the instant motion is actually a second or successive habeas petition is *Gonzalez v. Crosby*, 545 U.S. 524 (2005). In *Gonzalez*, the Supreme Court addressed the circumstances in which the use of Rule 60(b) is "inconsistent with" AEDPA's second or successive petition requirements and, consequently, unavailable to a state prisoner seeking habeas relief.[7] 545 U.S. at 526 (addressing "whether, in a [section 2254] habeas case, such motions are subject to the additional restrictions that apply to 'second or successive' habeas corpus petitions under [AEDPA], codified at 28 U.S.C. § 2244(b)"). The Court explained that federal courts must construe a Rule 60(b) motion as a "second or successive habeas corpus application" when it advances "one or more 'claims.'" *Id.* at 531–32 (quoting 28 U.S.C. § 2244(b)(1), (2)). The Court observed that "[i]n most cases, determining whether a Rule 60(b) motion advances one or more 'claims' will be relatively simple. A motion that seeks to add a new ground for relief . . . will of course qualify." *Id.* at 532. In addition, the Court instructed that a petitioner is actually advancing a habeas claim in a Rule 60(b) motion if he "attacks the federal court's previous resolution of a claim on the merits, since alleging that the court erred in denying habeas relief on

---

[7] Rule 60(b), like the rest of the Federal Rules of Civil Procedure, applies in habeas corpus proceedings under 28 U.S.C. § 2254 only 'to the extent that [it is] not inconsistent with' applicable federal statutory provisions and rules.'" *Gonzalez*, 545 U.S. at 529 (footnote omitted; alteration in original) (quoting now-Rule 12 of the Rules Governing Section 2254 Cases).

the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief." *Id.* (footnote omitted). Similarly, a motion seeking to present newly discovered evidence in support of a claim that the court previously denied represents a habeas claim. *Id.* In contrast, a motion is a "true" Rule 60(b) motion if it challenges a procedural ruling made by the district court that precluded a merits determination of the habeas petition, or "challenges a defect in the integrity of the federal habeas proceedings," such as an assertion that the opposing party committed fraud upon the court. *Id.* at 532, n.4.

Here, Hernandez is generally challenging the court's dismissal of his habeas petition on statute of limitations grounds. As such, the court generally construes his arguments as procedural and not as "new" claims for relief. *See Gonzalez*, 545 U.S. at 532, n.4 ("The term 'on the merits' has multiple usages. We refer here to a determination that there exist or do not exist grounds entitling a petitioner to habeas corpus relief under 28 U.S.C. § 2254(a) and (d). When a movant asserts one of those grounds (or asserts that a previous ruling regarding one of those grounds was in error) he is making a habeas corpus claim. He is not doing so when he merely asserts that a previous ruling which precluded a merits determination was in error-for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar."). Therefore, the court will address the merits of Hernandez's claims.

## B.   Analysis of Claims in Rule 60(b) Motion

### 1.   Rule 60(b)(4)

As indicated above, Hernandez can seek relief under Rule 60(b)(4) if the court's October 8, 2019 order is void. Unfortunately for him, Hernandez's arguments that the order is void fail on every level.

13

In the first instance, Hernandez misconstrues the concept of jurisdiction. "The power to hear and determine a cause is jurisdiction." *United States v. Arredondo*, 31 U.S. 691, 709 (1832). "Federal courts have jurisdiction to hear petitions for a writ of habeas corpus 'in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"[8] *Bones v. SCI Chester*, No. 16-cv-125, 2018 WL 3957067, at *2 (E.D. Pa. Aug. 17, 2018) (quoting 28 U.S.C. § 2254). Thus, the undersigned had jurisdiction to address Hernandez's section 2254 habeas petition.[9]

In addition, the court had the authority to refer the habeas petition to Judge Caracappa, and she had jurisdiction to issue a report a recommendation. In this regard,

> [e]ach United States magistrate judge serving under this chapter shall have within the district in which sessions are held by the court that appointed the magistrate judge, at other places where that court may function, and elsewhere as authorized by law-- . . . all powers and duties conferred or imposed upon United States commissioners by law or by the Rules of Criminal Procedure for the United States District Courts.

28 U.S.C. § 636(a)(1). Also,

> a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to the judge of the court proposed findings of facts and recommendations for the disposition, by a judge of the court, . . . of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

28 U.S.C. § 636(b)(1)(B). Based on these statutory provisions, this court had the authority to refer Hernandez's habeas petition to Judge Caracappa, and she had the authority to issue a report and recommendation, which this court could "accept, reject, or modify, in whole or in part." 28 U.S.C. § 636(b)(1); *see Flournoy v. Marshall*, 842 F.2d 875, 877 (6th Cir. 1988) (determining that district

---

[8] Congress has the power to "constitute Tribunals inferior to the supreme Court." U.S. Const. art. I, § 8. District courts are "courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[9] It is possible that Hernandez is arguing that the court lacked jurisdiction to dismiss his petition, but if the court lacked jurisdiction to dismiss it, the court would also lack jurisdiction to grant it.

court's referral of habeas petition to magistrate judge "was correct," and explaining that under section 636(b)(1)(B) district courts may refer habeas petitions to magistrate judges for report and recommendations); *see also Farmer v. Litscher*, 303 F.3d 840, 843 (7th Cir. 2002) (indicating that section 636(b)(1)(B) "provides that a district judge may 'designate a magistrate to … submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, … of applications for posttrial relief made by individuals convicted of criminal offenses,' *see* 28 U.S.C. § 636(b)(1)(B)—in other words, habeas corpus petitions"); *Clark v. Poulton*, 963 F.2d 1361, 1371 (10th Cir. 1992) (Seymour, J., concurring in part and dissenting in part) ("Under section 636(b)(1)(B), a magistrate may be designated to conduct evidentiary hearings and submit reports and recommendations on . . . listed dispositive motions, prisoner habeas petitions, and prisoner petitions challenging conditions of confinement." (footnote omitted)).

Second, to the extent that Hernandez claims that the Supremacy Clause of the Constitution[10] and the Supreme Court's decision in *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016) renders Title I of the AEDPA and 28 U.S.C. § 2244(d)(1) void or unconstitutional (or means that this court lacks jurisdiction), he is mistaken as neither are applicable here. In *Montgomery*, the Court concluded that the Court's prior decision in *Miller v. Alabama*, 567 U.S. 460 (2012) "announced a substantive rule of constitutional law" and, as such, it was retroactive "to juvenile offenders whose convictions and sentences were final when *Miller* was decided." 136 S. Ct. at 725, 736. *Montgomery* has no bearing on this case whatsoever, does not apply to AEDPA's statute of limitations, and surely does not, as Hernandez contends, "plainly deprive[s] this Court of

---

[10] *See* U.S. Const., art. IV, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land.").

jurisdiction." Mot. at 4. Moreover, the court need not address any Supremacy Clause argument because Hernandez does not even attempt to specifically articulate how AEDPA's statute of limitations violates it.[11]

Third, Hernandez's Tenth Amendment argument is baseless. The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend X. Here, Hernandez filed a <u>federal</u> habeas petition under 28 U.S.C. § 2254, which provides for a <u>federal</u> remedy. As such, his habeas petition was subject to a federal statute of limitations, 28 U.S.C. § 2244(d). Hernandez provides no authority that Congress lacks the authority to establish laws governing that federal remedy, such as the statute of limitations set forth in section 2244(d). As such, this argument fails.[12]

---

[11] While the court does not construe the instant motion to contain such a claim, the court notes that even if Hernandez was arguing that his sentence violated the Supremacy Clause, he did not explain how this is the case and such a claim would be a new claim which is not cognizable as part of this particular motion and would need to be included in an application with the Third Circuit to file a second or successive habeas petition.

[12] While Hernandez cites to *New York v. United States*, 505 U.S. 144 (1992) and *Murphy v. National Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018) in support of his Tenth Amendment argument, those cases are inapplicable. In *New York*, the Supreme Court addressed whether three provisions of a federal law, the Low-Level Radioactive Waste Policy Amendments Act of 1985, violated the Tenth Amendment. 505 U.S. at 149. The Court ultimately concluded that one of the three provisions violated the Tenth Amendment because, through it, Congress was compelling the states to take possession of low-level radioactive waste when requested to do so by the owner of the waste, and then also be liable for all damages by the owner caused by the state's failure to promptly take possession of the waste. *Id.* at 149, 153–54. In *Murphy*, the Court addressed whether a federal law, the Professional and Amateur Sports Protection Act ("PASPA"), violated the Constitution insofar as it generally prevented states from authorizing sports gambling schemes and New Jersey was seeking to legalize sports gambling in its casinos and horseracing tracks. 138 S. Ct. at 1468. The Court concluded that "regardless of whether a federal law commands state action or precludes it, Congress cannot issue direct orders to state legislatures." *City of Chicago v. Barr*, 961 F.3d 882, 897 (7th Cir. 2020) (citing *Murphy*, 138 S. Ct. at 1478).

Hernandez asserts without any legal support that Title I of AEDPA (or section 2244(d)) "has the same force and effect" as PASPA, which the Court struck down in *Murphy*. This court finds no similarities between section 2244(d) and PASPA. Moreover, he provides no support for his other assertions, such as: section 2244(d)(1) "coerced and compelled Respondents to implement procedural changes to state-PCRA process which <u>govern</u> and <u>regulate</u> Petitioner on state-PCRA review," Mot. at 4; the PCRA's limitations provision, 42 Pa. C.S. § 9545(b)(1), is "in direct conflict with AEDPA's procedural one-statute [sic] of limitations, *id.*; or the state respondents "receive the benefit of special, favorable rules," *id.*

The court also notes that Hernandez argues that "[b]ecause state Respondent changed state PCRA process to opt-in to AEPDA, AEDPA violates the Tenth Amendment and anticommandeering principles." *Id.* at 5. This argument is also frivolous. While AEDPA contained an opt-in provision, it pertained only to an "expedited federal habeas review process in ***capital cases***." *Sherwood v. Beard*, Civ. A. No. 1:10-CV-1073, 2011 WL 6888653, at *3 (M.D. Pa. Dec.

Fourth, Hernandez's *McQuiggin* argument also does not warrant any relief. In *McQuiggin*, the Supreme Court concluded that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in [*Schlup v. Delo*, 513 U.S. 298 (1995)] and [*House v. Bell*, 547 U.S. 518 (2006)], or, as in this case, expiration of the statute of limitations." 569 U.S. at 386. At no point in his submission does Hernandez point to any fact showing that he is actually innocent of the crimes to which he pleaded guilty. A showing of actual innocence is a "burdensome task that requires a petitioner to 'persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Satterfield v. District Attorney Philadelphia*, 872 F.3d 152, 163 (3d Cir. 2017) (quoting *McQuiggin*, 569 U.S. at 386). Hernandez has failed to make such a showing here. Moreover, his claim that he is actually innocent because his sentence is purportedly illegal under *Alleyne* is not cognizable. *See Gardner v. Warden Lewisburg USP*, 845 F.3d 99, 103 (3d Cir. 2017) (concluding that *pro se* habeas petitioner's "challenge cannot be raised in a § 2241 petition based on [*In re Dorsainvil*, 119 F.3d 245 (3d Cir. 1997)]-like claims of actual innocence" because "[l]ike *Apprendi*, *Alleyne* did not establish a rule that made prior criminal conduct noncriminal[; instead,] *Alleyne* is essentially an extension of *Apprendi*" (citing *United States v. Burnett*, 773 F.3d 122, 136 (3d Cir. 2014))); *Davis v. Kauffman*, Civ. A. No. 18-5596, 2020 WL 832096, at 1, n.1 (E.D. Pa. Feb. 19, 2020) ("Davis also alludes to *Alleyne* . . ., which relates to facts that enhance sentencing that must be found by a jury, and not to a claim of actual innocence."); *White v. Clark*, Civ. A. No. 2:17-cv-1460, 2018 WL 1770661, at *3 (W.D. Pa. Feb.

---

30, 2011) (citing 28 U.S.C. § 2261). This case is not a capital case. In addition, Pennsylvania is not an opt-in state. *See Death Row Prisoners of Pa. v. Ridge*, 106 F.3d 35 (3d Cir. 1997) (concluding that Pennsylvania is not "opt-in" state under AEPDA); *see also Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999) (describing conclusion in *Death Row Prisoners of Pennsylvania* as "Pennsylvania is not an 'opt-in' state for purposes of the AEDPA and that therefore the AEDPA's amendments to Chapter 154 of Title 28 do not apply to habeas petitions in capital cases from Pennsylvania").

20, 2018) ("White's actual innocence assertion is predicated on *Alleyne*. However, an allegation of an illegal sentence does not constitute or establish 'actual innocence.' White has not offered any evidence of or proven actual innocence other than his unsupported statement that '[it] is irrefutable that Mr. White is actual[ly] innocence [sic] of the illegal / unconstitutional sentence.' Thus, his claim of actual innocence cannot justify an equitable exception to overcome AEDPA's one-year statute of limitations." (alteration in original)); *see also Griffin v. Maiorana*, 647 F. App'x 430, 432 (5th Cir. 2016) ("[B]oth *Alleyne* and *Apprendi* address sentencing issues and have no effect on whether the facts of Griffin's case would support his convictions for the substantive offenses, nor do they support the contention that he was convicted of a nonexistent offense." (citations omitted)).

Furthermore, and as already indicated, Hernandez's actual innocence argument would not render this court's prior order void. As such, it is more properly considered to be a request for relief under Rule 60(b)(6). To the extent that Hernandez actually seeks to proceed with this argument under this Rule, his argument is meritless. *See Romero v. Florence FCI*, 550 F. App'x 72, 72 (3d Cir. 2014) (rejecting claim that decisions in *Alleyne* and *Peugh v. United States*, 133 S. Ct. 2072 (2013) could support Rule 60(b)(6) relief and noting that "no other court of appeals has granted Rule 60(b)(6) relief on the basis of either *Peugh* or *Alleyne*").

Finally, while Hernandez raises a due process argument in his motion, the court cannot discern the precise nature of his argument. He bases this contention on his meritless argument that section 2244(d)(1) (a/k/a Title I of AEDPA) violates the Tenth Amendment. *See* Mot. at 5 ("Petitioner avers that because Title I of AEDPA is facially and as-applied unconstitutional under the Tenth Amendment, *New York*, and *Murphy*, and violates anticommandeering principles, its provisions . . . plainly violates Fifth Amendment Due Process."). He blanketly claims that section

2244(d)(1) "giv[es him] notice of nothing and depriv[es him] of no[t] merely an opportunity to be heard, but of a fair and meaningful opportunity to be heard under *Mathews v. Eldridge*, 424 U.S. 319 (1974)." *Id.*

Hernandez fails to explain how section 2244(d)(1) fails to give him notice, given that it expressly informs him that he has one year from the date his judgment becomes final to file his habeas petition. Also, "the availability of equitable tolling in cases when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence, ensures that § 2244's limitation is constitutionally applied[.]" *Tinker v. Moore*, 255 F.3d 1331, 1334 (11th Cir. 2001). Further, as Hernandez is unsuccessfully attempting to argue here, a habeas petitioner can come forward with new evidence demonstrating actual innocence to avoid a possible unjust application of the statute of limitations. At bottom, Hernandez has failed to demonstrate how these proceedings violated his right to due process. As such, this claim does not entitle him to any relief. *See Dogan v. Roe*, 8 F. App'x 612, 614 (9th Cir. 2001) (rejecting petitioner's claim that section 2244(d) violates Due Process Clause because "it requires inmates without legal training to comply with the limitations period"), *cert. denied*, 534 U.S. 1092 (2002); *Ellis v. Martin*, 202 F.3d 281, at *3 (10th Cir. 1999) (rejecting habeas petitioner's argument that "AEDPA's imposition of a one-year limitations period for filing a petition for a writ of habeas corpus is unconstitutional either because the limitations period violates the Suspension Clause, U.S. Const. art. I, § 9, cl. 2, or is a violation of substantive due process"); *see also Tinker v. Moore*, 255 F.3d 1331, 1334 (11th Cir. 2001) (explaining that availability of equitable tolling ensures AEDPA's one-year statute of limitations is constitutionally applied).

## 2.      Rule 60(b)(6)

For his Rule 60(b)(6) motion, Hernandez appears to be contending that new, purportedly controlling precedent constitutes an extraordinary circumstance which warrants relief. Mot. at 6–7. With respect to a claim under Rule 60(b)(6), this court "may only grant relief under [this] Rule . . . in 'extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur.'" *Satterfield*, 872 F.3d at 158 (quoting *Cox v. Horn*, 757 F.3d 113, 120 (3d Cir. 2014)). "This is a difficult standard to meet, and '[s]uch circumstances will rarely occur in the habeas context.'" *Id.* (alteration in original) (quoting *Gonzalez*, 545 U.S. at 535).

Regarding Hernandez's argument concerning a change in controlling precedent, "changes in decisional law will 'rarely' constitute 'extraordinary circumstances' for purposes of a Rule 60(b) motion." *Id.* at 160 (quoting *Cox*, 757 F.3d at 121). Thus, "*Gonzalez* leaves open the possibility that a change in law may—when accompanied by appropriate equitable circumstances—support Rule 60(b)(6) relief." *Id.* at 161 (footnote omitted). The court must conduct "a 'case-dependent analysis' rooted in equity[, which] manifests as a 'flexible, multifactor approach to Rule 60(b)(6) motions … that takes into account all the particulars of a movant's case,' even where the proffered ground for relief is a post-judgment change in the law." *Id.* (quoting *Cox* 757 F.3d at 122, 124).

Here, Hernandez asserts two changes in decisional law, *Murphy v. National Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018)[13] and *United States v. Haymond*, 139 S. Ct. 2369 (2019). The court will not address *Murphy* again here, as it is inapplicable to this case despite Hernandez's attempt to contort its holding and analysis to apply to AEDPA's statute of limitations.

As for *Haymond*, in that case the Court addressed whether subsection (k) of the supervised release statute, 18 U.S.C. § 3583, violated the Fifth and Sixth Amendments. 139 S. Ct. at 2373–

---

[13] Hernandez references this case as "*Murphy v. U.S.*," Mot. at 7, but this appears to be a typographical error.

75. This subsection required a judge to "impose an additional prison term of at least five years and up to life without regard to the length of the prison term authorized for the defendant's initial crime of conviction" if the judge found "by a preponderance of the evidence that [the] defendant [while] on supervised release committed one of several enumerated offenses." *Id.* at 2374. The district court had determined by a preponderance of the evidence that the defendant "knowingly downloaded and possessed" thirteen images of child pornography. *Id.* Although the district court indicated that it would have sentenced the defendant to a lesser period of incarceration for violating the terms of his supervised release, the court sentenced the defendant to a mandatory term of five years' imprisonment because subsection (k) applied to the offense of possessing child pornography. *Id.* at 2375. On appeal to the Tenth Circuit Court of Appeals, the Tenth Circuit vacated the judgment of sentence because the district court imposing "a new and higher mandatory minimum resting only on facts found by a judge by a preponderance of the evidence" violated the defendant's right to a jury trial. *Id.*

On appeal to the Supreme Court, a plurality of the Justices agreed with the Tenth Circuit.[14] *Id.* at 2373. Writing for the plurality, Justice Gorsuch concluded:

> Based on the facts reflected in the jury's verdict, Mr. Haymond faced a lawful prison term of between zero and 10 years under § 2252(b)(2). But then a judge— acting without a jury and based on only a preponderance of the evidence-found that Mr. Haymond had engaged in additional conduct in violation of the terms of his supervised release. Under § 3583(k), that judicial factfinding triggered a new punishment in the form of a prison term of at least five years and up to life. So just like the facts the judge found at the defendant's sentencing hearing in *Alleyne*, the facts the judge found here increased "the legally prescribed range of allowable sentences" in violation of the Fifth and Sixth Amendments. [570 U.S.] at 115[.]

---

[14] Justice Breyer concurred in the judgment even though he "agree[d] with much of the dissent" and indicated that he "would not transplant the *Apprendi* line of cases to the supervised-release context." 139 S. Ct. at 2385. "Nevertheless, [he] agree[d] with the plurality that this specific provision of the supervised-release statute, § 3583(k), is unconstitutional" because "three aspects of this provisions considered in combination, lead me to think it is less like ordinary revocation and more like punishment for a new offense, to which the jury right would typically attach." *Id.* at 2386

*Id.* at 2378. Importantly, Justice Gorsuch explained that "our decision is limited to § 3583(k)—an unusual provision enacted little more than a decade ago—and the *Alleyne* problem raised by its 5-year mandatory term of imprisonment." *Id.* at 2383.

Despite Hernandez's protestations to the contrary, *Haymond* has no applicability to this case. As indicated above, the holding in the case was limited to determining the unconstitutionality of section 3583(k), and Hernandez is a state court inmate, so he obviously was not sentenced under this provision. In addition, *Haymond* is not factually analogous to his state case and is essentially an extension of *Apprendi* and *Alleyne* to another statutory provision. As such, it did not, as Hernandez claims, "expressly recognize[] a new right." Mot. at 10.

As an additional note, even if *Haymond* somehow applied to this case, Hernandez has not demonstrated any equitable circumstances that would justify this court granting Rule 60(b)(6) relief. Unlike the defendant in *Satterfield*, Hernandez has neither shown nor attempted to show that he is actually innocent of the offenses to which he pleaded guilty and his *Alleyne* sentencing argument is not such a showing. In addition, the substance of his *Alleyne* argument is meritless. As explained by the Superior Court of Pennsylvania in rejecting Hernandez's claim that the PCRA court erred in denying his PCRA petition:

> There is a critical flaw in [Hernandez's] invocation of *Alleyne*. Our review of the sentencing transcript confirms that no mandatory minimum sentence was invoked or applied in this case. Indeed, none was even mentioned. Instead, the court imposed sentence after consideration of a pre-sentence report, the guidelines, impact statements from the victim and his sister, and [Hernandez's] allocution. Its sentence was premised on the fact that [Hernandez]: 1) was a member of a notorious gang and sold drugs to support himself; 2) was on parole when the crime occurred; 3) committed "a number of misconducts in the prison," including one involving an assault; 4) admitted during the pre-sentence investigation that he perpetuated "other crimes for which he was never caught by the authorities;" 5) confessed to the pre-sentence investigator that he killed a number of animals, including dogs and cats; 6) engaged in a similar assault in the past; 7) used "weapons[,] … [a] screwdriver, a knife, a rope or nylon cord" during the assault at issue; and 8) had no employment history. N.T. Sentencing, 7/23/13, at 23–25. The court also weighed the serious

impact that the crime had on the victim and that [Hernandez] and his accomplice evidenced a callow disregard as to whether the victim lived or died. *Id.* at 25–26.

> Significantly, in his appellate brief, [Hernandez] fails to indicate which mandatory minimum sentence he believes was applied. He suggests, that during sentencing, the court considered that he committed "an **armed** and violent crime and pursuant thereto invoked a minimum sentence that" violates *Alleyne, supra*. Appellant's brief at 10 (emphasis in the original). [Hernandez] is mistaken. The court never  mentioned that [Hernandez] was armed since he was not. Rather, it correctly noted that [Hernandez] used weapons consisting of a screwdriver and knife on his victim. Moreover, it did not apply a mandatory minimum sentencing provision. Sine [sic] [Hernandez's] *Alleyne* claim fails, the PCRA court did not commit an error in dismissing [Hernandez's] petition.

*Hernandez*, 2016 WL 6124325, at *2 (fourth and fifth alterations in original).

Furthermore, the Court in *Alleyne* expressly indicated that the type of judicial factfinding that occurred when the state trial court imposed the sentence in Hernandez's case does not violate the Constitution: "[W]e take care to note what our holding does not entail. Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." 570 U.S. at 116 (citation omitted). As such, Hernandez's argument that a state trial court in Pennsylvania, merely because it has to impose a minimum sentence as part of the Commonwealth's sentencing scheme, *see* Mot. at 10 (citing 42 Pa. C.S. § 9756(a)), violates the Constitution because all facts relied upon by the court in imposing that minimum were not found by a jury, is meritless.[15]

---

[15] In addition, his argument that a Pennsylvania state trial court must sentence a defendant to a minimum sentence makes that minimum sentence a "mandatory" minimum sentence warranting application of *Alleyne* is frivolous. The court notes that Pennsylvania's sentencing guidelines are advisory in nature even though a sentencing court must "respect[] and consider" them when imposing a sentence. *Commonwealth v. Walls*, 926 A.2d 957, 965 (Pa. 2007). Contrary to a statute requiring a sentencing court to impose a mandatory minimum period of **confinement** in a particular case, a Pennsylvania court need not impose a minimum sentence of confinement in every case, even if the sentencing guidelines would support it. Instead, a sentencing court could depart below the guidelines to impose, for example, a probationary sentence. At bottom, no court has ever held that Pennsylvania's sentencing scheme violates *Alleyne* simply because, when imposing a sentence of incarceration, a sentencing court must impose a minimum and a maximum sentence.

### III.    CONCLUSION

For the reasons discussed above, Hernandez has failed to demonstrate that he is entitled to relief from this court's October 8, 2019 order, which dismissed his section 2254 habeas petition because he failed to file it within the one-year statute of limitations and was not entitled to equitable tolling. Therefore, the court will deny the motion. The court will also not issue a certificate of appealability because Hernandez has neither made "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), nor "demonstrate[d] that reasonable jurists would find [this court's] assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Lambert v. Blackwell*, 387 F.3d 210, 230 (3d Cir. 2004).

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.